Amilcar Castillo-Duarte v. William Barr Let's hear from Mr. Mercado. You have 15 minutes and 5 minutes on the button. Thank you, Your Honor. If it may please the court, Petitioner Amilcar Castillo-Duarte has been li... Your sound is going out. Did you touch anything? Your sound is not... Okay. Sorry about that. I apologize, Judge. I'll restart. Petitioner Amilcar Castillo-Duarte has been living in the United States for 31 years and is the married father of three U.S. born children. Unfortunately, at this time, he's at risk of being removed from the United States and separated from his family. He did 31 years ago, when he was only 15 years old, he did not receive a letter directing him to appear before the immigration court in Harlingen, Texas. This court precedent firmly established that the Board of Immigration Appeals cannot deny a motion to rescind an ineffectual order of removal simply because a hearing notice was not returned to the immigration court as undeliverable. According to its own precedent, the BIA must address all record evidence that may weigh in favor of a petitioner's claim that he did not receive a notice of hearing. In this regard, the court has repeatedly held that affidavits may be sufficient to overcome the weak presumption of delivery when a notice of hearing is sent by a regular mail. In this case, the BIA denied Mr. Castillo's motion for one reason. The notice of hearing was not returned to the immigration court as undeliverable. In reaching this conclusion, the board failed to assess their credibility or even mention Mr. Castillo's affidavit and the affidavit of Ms. Josefina Quijada, his cousin and co-tenant in 1989. In their affidavits, both Mr. Castillo and Ms. Quijada stated that they did not receive any letters from the immigration authorities that a court did in 1989 and they explained that on November 16, 1988, Mr. Castillo had appeared for an immigration appointment in Los Angeles, California, thus indicating that if he had received a notice of hearing, he would have certainly appeared for his hearing in January 1989. Since the board indisputably failed to address all of the record evidence weighing in favor of Mr. Castillo's claim of non-receipt, this matter must be remanded. Furthermore, even if the service of the hearing notice was proper, Mr. Castillo had reasonable cause for his failure to appear. At the time of the issuance of the order of deportation, Mr. Castillo was only 15 years old and wholly dependent on his cousin, Ms. Quijada, who was responsible for receiving the mail at 424 Pamela Road, Duarte, California. Since Ms. Quijada failed to notify him of a hearing set for January 12, 1989, Mr. Castillo had reasonable cause for his failure to appear. In that regard, we ask the court to grant expectation of a review and remand the matter back to the BIA. Thank you, sir. I'm sorry, Judge Dennis. Go ahead. Do you have a question? Thank you. Could you please go through the factual timeline a little bit with this? I'm just a tad confused on the factual timeline. He says that he went on November 16th for his hearing. Is that right? Your Honor, that was an appointment with the INS authorities in Los Angeles. He was arrested by the INS officials, who would now be called border patrol agents near the Texas-Mexico border. And before his release on November 3rd, he was directed to appear at the INS district office in Los Angeles, California, November 16th, just for a check-in to notify them of his address. And he appeared at that appointment with Ms. Quijada's son, his cousin. And after that, he did not receive any further notices from the court. Okay. But his position that the case was dismissed, is he relying upon that alleged statement by someone at the office on November 16th or part of his reason that he didn't appear? Is he relying upon that information at all? Not on that information alone. When they went to that appointment, they were told that the case was dismissed and they had nothing for them. So they patiently continued to wait at home for a letter, but nothing ever came. Since they were told that the case was dismissed, they figured that it was. But that was not the only reason for why he failed to appear. He just didn't know of any hearings. He did not receive a notification in writing. So what did he do between that time period and 1991 to try to determine his immigration status that's in the record? In the early 1990s, he did file for asylum. I believe that was in 1994, 1995. And in 1997, his wife did file a petition for him. But he didn't argue in 1994, 1995 that he didn't know about the date, right? Well, he only learned about the deportation order in 1998 when he and his wife went to an immigration attorney in New York to file for residency. When the residency application was denied for the reason that jurisdiction lied with the immigration court since there was a deportation order. That's when he learned about the deportation order. Was that in 97 or 98? I believe, according to his wife's affidavit, that was in 1998. Okay, so he did nothing once he learned about the order, though, until 2007. Is that correct? Yes, Your Honor. As he explained in his affidavit, unfortunately, after learning about his deportation order, his wife had some serious health issues. She was diagnosed with type 2 diabetes, and the family was busy taking care of that medical condition. A decade? Not quite a decade, nine years. I won't quibble with you on whether it's 97 or 98. Your Honor, he did actually file another application. We do have a copy of a work permit in the file where he was seeking work authorization based on the residency application in, I believe, around 2004. He was in constant contact with different attorneys, but he wasn't able to get the right help. But he wasn't presenting himself or trying to clear up this issue, even though he knew about it, correct?  He did seek a residency application in 1998, and I believe... No, he wasn't turning himself in for the fact that he had had this order against him. I mean, he wasn't doing any... And the reason this is relevant is because you want the... And I don't know how to correctly pronounce it, and you can please correct me and tell me how to say it. McNuhoah v. Gonzalez says that it was relevant that he didn't know about the date, but that he continued to stay apprised, and that that was important to the court. Um... Yeah, that's right. We also have to take into consideration that when he did receive the deportation order, he was 15 years old. So when he became an adult, that's when he started seeking to legalize his status, and that's when he learned about the deportation order, and he relied on the attorneys that were helping him take the correct action to help him resolve the situation. Now, I'm not sure if he would have known that he could have turned himself in. He was just relying on his attorney's advice that it's best to file a motion to reopen, which they did, and which was unfortunately denied. Okay. But your best case is the McNuhoah case? No, Judge, our best case would be Hernandez v. Lynch, where this court ruled that the BIA, when considering these claims of non-receipt, has to take into consideration all of the record evidence, and that includes statements made by the respondents and any other witnesses about the non-receipt. Right, but there's no evidence that the BIA did not take that into consideration. It's just the BIA didn't conclude. We have to conclude that the BIA abused its discretion, and it could do that if it absolutely didn't consider the evidence, but we can't tell from this opinion whether it considered the evidence and rejected it or not. Your Honor, there's no mention of these affidavits, which would be critical evidence in this regard. In the decision, the BIA simply says, We have reviewed the evidence of record and continue to find that there's a presumption of proper delivery in this case. They don't mention his affidavit. They don't mention his cousin's affidavit. They don't mention the facts that he alleged in his affidavit that he attended an INS appointment on November 16, 1988, and I believe the decision of Hernandez v. Lynch mandates that the BIA actually engage those facts and engage the affidavit presented by the respondents and assess the credibility. So should we demand for the BIA to engage with the facts? Is that what we should do here? Exactly, Your Honor. That's what we're asking for. But can you help us, though? Isn't it true that the court could still determine that your client failed to rebut the presumption under Hernandez? The court just has to consider the affidavits. The affidavits don't automatically resolve. So that's why it's hard to find abusive discretion here, because as long as the court considers it, there's no dictated outcome. Isn't that correct? Judge, there's no dictated outcome, but due process would mandate that the board has an obligation to actually consider the evidence and make a decision on it. They could say that despite your allegations and despite the affidavits, we still believe that the fact that the hearing notice was not returned would not rebut the presumption, but they would actually have to state that on the record. That would have to be in writing. They could say, we look at the credibility, and, you know, this was 30 years ago. Who knows what these people's memory was of the mail, and he waited so long, and all these other things they could say. Yeah, we still think the likelihood that the mail got there, that's more likely than not. Yes, they could certainly say that, but within the parameters of the court's precedent, they also, you know, if the affidavits are without evidentiary flaw, there's no reason not to believe the affidavits, and there was a reason to believe that he had no reason to abscond, because he had attended an appointment with the INS only two months earlier prior to the deportation order, then this court's precedent may dictate that they should ultimately find that he did rebut the presumption. You can rebut a presumption, you still have the ultimate question. Even if you rebut a presumption, that just takes out the presumption, then you still have the ultimate evidentiary credibility determination to make. But anyway, that's... Yes, sir, so the ultimate credibility determination is certainly with the BIA as to the affidavits. And alternatively, our second argument was that considering the age of the respondent and that he was not notified by his cousin, who was his caretaker at the time that he had a court date, he had a reasonable cause for failing to appear. And for that reason alone, the matter should be reopened, since the standard prior to 1992 to rescind an in absentia order was simply to show that he had reasonable cause for failing to appear. A 15-year-old... He wasn't even living with her, was he? Yes, he was. He was living with her from November... I thought he was gone across the country or something. He did move out of her residence in January 1989, but that was already after the deportation order had been issued. It was two months after the hearing notice had been sent. But at the time that the hearing notice was sent, she was responsible for the mail at that address. She failed to give it to him if she had received it, which she claims that she did not. But had she even received it, she failed to give it to him. And being 15 years old, he couldn't independently ascertain whether he had a hearing to go to or not. He was reliant on his adult caretaker, and if she told him that there was nothing in the mail cart and nowhere to be, then he would have reasonable cause for his failure to appear. And that issue was not addressed by the BIA at all. They simply stated that under the precedent of Luper de Bon, that notifying a minor over the age of 14 constitutes proper service. But that wasn't really our claim. Our claim was the fact that he was 15 years old, and in the care of adults who failed to notify him, that does constitute reasonable cause for his failure to appear. So we would ask the court to remand... Who is Lucas de Bon? Judge, we concede that notice may have been proper. It may have been sent to the right address. But considering the respondent's age and the fact that his caretaker or his adult guardian failed to notify him of the hearing, he had a reasonable cause for failing to appear. But he was over 14. Yes, Judge, there's a distinction there. Under Lucas de Bon was based on the standard for cases commenced after 1992, and there you would have to show either lack of receipts or exceptional circumstances. None of those apply here. Before 1992, if you had reasonable cause for failing to appear, that alone could be enough. So even if notice was legally proper, we're saying that his household member, the main person responsible for the household, failed to notify him, and that alone would be reasonable cause for a 15-year-old who is dependent on that adult to get support. Is there any case that holds that this would be reasonable cause upon which you rely? Judge, I believe this is an issue of first impression. I have not been able to locate a case that says so. Thank you. Thank you, Alice. Thank you, Mr. McCarty. Mr. Oliveira. May it please this Court, on behalf of the respondent, the Attorney General, my name is Andrew Oliveira. Nearly 30 years later after receiving an in absentia order, Petitioner moved the Board to rescind the in absentia order. The evidence in the record does not compel reversal of the determination that he failed to rebut the presumption of delivery. The Board did, in fact, consider all of the evidence presented and concluded that he failed to rebut the presumption. Specifically, the Board cited the fact that the address that the notice was mailed to was correct, which Petitioner conceded. They noted that any claim that the guardian was incorrect should have been corrected by Petitioner when he signed the order of release. They also noted that there was no returned mail for either the hearing notice or the in absentia order itself. But there's no indication that the Board specifically considered the affidavits, is there? Because all of those things would be said even if there were no affidavits. The Board specifically considered the arguments raised in the motion we opened, specifically cite the motion itself and address those issues. How do we know that the Board considered the evidence before it? I'm reading the opinion. Well, because the Board, there's nothing in the record to suggest that the Board did, in fact, ignore the evidence. Can you prove a negative that they, I mean, whether they ignored or not ignored, it's not addressed. His statement is simply that he did not receive the notice of hearing. That's the affidavit. The opinion to me seems really focused on this address issue, which they're not challenging here, you know, whether the right address was used, and doesn't really say that there was evidence that the mail didn't get there. Nor does the order say the lighter presumption applies because it wasn't certified mail. I mean, I don't think that, you know, they don't have to document every piece of evidence. They don't have to address everyone. But even when they cite, as you said, all they cite is the motion. If even in that site they'd also cited the affidavit, I would think that'd be enough. But it's just hard to tell that they really consider this issue of non-delivery, especially with the focus on the right address, being used. Correct, but there is a presumption that the Board does consider the evidence. And there's nothing to suggest that they do not consider the evidence here. Not acknowledging it would be at least suggest. I mean, maybe it doesn't carry the day, but that's where you'd get that idea. Normally a judge would say something like, oh, and I know they've produced affidavits saying the mail didn't get there, but I've looked at those, and I still think it's more likely than not that the Postal Service delivered the mail like it usually does. Well, Your Honor, the Board did cite to the motion which itself referenced the affidavit. So, and given their full discussion of the evidence, the Board did consider all of the evidence presented to it. And they determined that the petition did not rebut the presumption. And that determination is fully consistent with the decisions of this court. Specifically, Mauricio Benitez, which is almost very similar facts, and Hernandez-Matuch. And in that case, it cannot be said that the Board was arbitrary or capricious in denying the motion to rescind given that the decision was fully consistent with the decisions of this court. And I would like to just briefly address the age issue. The argument that as a minor over the age of 14 but under 18 is reasonable cause for not appearing is foreclosed by Lopez Huzon, which states that teenagers over the age of 14 can't take responsibility for their own legal actions. In an exceptional circumstances case, the Sixth Circuit held that age alone is not an exceptional circumstance. It follows that age is not a reasonable cause for simply showing up. There cannot be a blanket rule that persons 14 to 18 simply do not have to attend their removal hearings. Counsel, it's not clear to me why you believe that Mauricio Benitez is directly on point. Because in that case, there is an address issue, that there's a wrong address. And we said that because the petitioner knew that he needed to correct any mistakes and notify of the correct address, it was on him that he didn't get it if it was mailed to the wrong address. This is not a wrong address situation at all. We don't know if there's wrong address, we just know that either he received it and he's not telling the truth or not remembering, or he didn't receive it. There's not an issue about the address or the guardian or any of those types of things that are in these other cases. Well, actually, your honor, petitioner in his motion really specifically makes a point that it was the incorrect guardian on the address. That it was addressed to the wrong person. I'm not saying that right now. That's not before us now. That may have been an issue earlier, but now that he's pivoted from that. Hasn't he? He has, but that's a considerable portion of the argument he raised to the board, which is why the board addressed it as such. Right, but we can't use Mauricio Benitez as the authority to say it's okay that the BIA didn't address his affidavits because Mauricio Benitez said that's fine. Because it doesn't say anything of the sort. Well, again, your honor, but they did reference the arguments that he made. And if the only fault of the board is that they didn't do a string cite to both the motion and the affidavit. Where they specifically cite pages of the motion, which in turn referenced the affidavit. The board was simply not arbitrary and cautious. They considered the arguments he presented, weighed the evidence before it, and reached a conclusion that was the same as the board and this court had reached. But the second part of that was weighed the evidence before it. That's what the problem is. We're not dealing with whether they considered the argument. We're dealing with whether they weighed the evidence. And the record reflects that they did, in fact, do so. Tell us where, I think we've done this more than ten times now, but is there some place in the record where it says we weigh this evidence and we find it lacking? Again, they cite to the motion. Moreover, the respondent does not explain why the notice of hearing was someone else's name as his guardian or where the name came from. On the first page, again, while they cite to the motion, the motion itself refers to the affidavit. Is it your opinion that BIA can always just say, we've considered the motion and we reject it, the end? I mean, that seems inconsistent with our decision saying they need to at least acknowledge the countervailing evidence. That is correct. But the board did not simply ignore, they didn't just simply say, we consider it and we deny it. They provided the rationale for why he failed to rebut the presumption. To me, the only thing they specifically addressed is this whole issue of who was the guardian and was it addressed to the right thing. Not the issue of there's actually some evidence he's produced that the mail just didn't get there. I just really didn't think it was even on the board's mind. Well, they addressed the argument that he raised to them. And he specifically argued that the notice was insufficient because it had the wrong guardian name, which is why they addressed that issue. Thank you. If there are no further questions, we ask that this court affirm the decision of the board as the board was not arbitrary or capricious. Thank you. Mr. O'Leary, you have five minutes. The petitioner concedes that there's a presumption of delivery. The question is whether the petitioner has rebutted the presumption of delivery. The board never answered that question. The board simply stated that we have reviewed the evidence of record and continue to find that there's a presumption of proper delivery in this case. But they never answered the question or engaged the facts to assess whether that presumption was rebutted or not. And that brings up a point I wanted to ask about. Is the board's obligation to engage with the evidence less because this is the second time it was being asked to reopen based on non-delivery? Now, I understand here he had more evidence. He beefed up his evidence. But they did, about a decade earlier, say, no, it was delivered. We think it was delivered. And now, a decade later, they're having the same issue. Is that less than the specificity they need to engage with the evidence? I don't believe so, Your Honor, because the board has specific precedent on this issue. That is a matter of Cruz-Garcia, 22 INM Decision 1155, B.I. in 1899, where they say that there are no number or time limitations on motion to rescind in absentia orders for... I know he could bring it. I know no one's saying he couldn't bring it. But in considering it, you know, if it's the second, third, fourth, fifth time they've seen the same issue, do they have to be as thorough in engaging with the evidence? I believe, Judge, in accordance with the petition's due process rights, he has a right to pass his motion considered in its totality every single time. Even if the facts are repeated. And the board utterly failed to address his evidence in this case, and that's why we're seeking a remand. That's all, Your Honor. Thank you, Mr. McGrawley. That concludes our argument in this case.